Ronald **EFKAMP**, Appellant,

v.

**IOWA DEPARTMENT OF JOB SERVICE**, Appellee.

No. 85–754.

Supreme Court of Iowa.

March 19, 1986.
Rehearing Denied April 18, 1986.

Jack Kegel, Des Moines, for appellant.

Walter F. Maley, Blair H. Dewey, and Joseph L. Bervid, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

HARRIS, Justice.

This dispute concerns a worker's entitlement to unemployment compensation. He resigned rather than accepting the reduced pay which was negotiated under a collective bargaining agreement. The hearing officer denied benefits. The trial court agreed and so do we.

Efkamp (the petitioner) was employed by Oscar Mayer, a meat processing plant in Perry, Iowa, from September 4, 1963 until May 27, 1983, eventually earning $10.89 per hour in the boning department. The evidence suggests at least three different reasons for Efkamp's resignation from his job. We can and should ignore the others however because the hearing officer's findings were supported by the record made before the agency when that record is viewed as a whole. *See Taylor v. Iowa Department of Job Service,* 362 N.W.2d 534, 537 (Iowa 1985).

Because Oscar Mayer was experiencing economic problems the company and the union renegotiated their collective bargaining agreement in order for the plant to continue to operate. Under the new agreement Efkamp's wages were reduced to $8.00 per hour. Rather than accept this amount he quit.

The hearing officer (reversing a claims deputy's decision) concluded Efkamp had voluntarily terminated his employment without good cause attributable to his employer. His decision, later adopted in full by a majority of the Job Service Appeal Board, stated:

A voluntary termination of employment because of a substantial change in the contract of hire by the employer is with good cause attributable to the employer, and the claimant would be entitled to receive unemployment insurance benefits. In the matter under review, however, the claimant accepted his employment with Oscar Mayer conditioned upon

his representation by the union and abiding by the collective bargaining agreement. Notwithstanding the wage of the claimant was to be reduced in excess of $2.00 per hour and the job description of the claimant was changed, there was no substantial change in the contract of hire by the employer, as a condition of the claimant's employment was that he be represented by the union and abide by the terms of the collective bargaining agreement. The union and management agreed to a new collective bargaining agreement, which claimant refused to accept. As abiding by the collective bargaining agreement was a condition of the claimant's employment, claimant has failed to establish he had good cause to voluntarily terminate his employment.

On judicial review the district court affirmed, emphasizing that the " 'causes' being alleged were not attributable to the employer" because of the collective bargaining agreement. This appeal followed. *See* Iowa Code § 17A.20 (1985).

■ I. A worker is disqualified for unemployment compensation benefits "[i]f the individual has left work voluntarily without good cause attributable to the individual's employer, if so found by the department." Iowa Code § 96.5(1) (1985). On the other hand a worker is deemed to have left employment with good cause (and hence is not disqualified) if the resignation results from a substantial change in the contract of hire. 370 Iowa Admin.Code § 4.26(1). Section 4.26 provides that any such change "must be substantial in nature and could involve changes in working hours, shifts, remuneration, location of employment, drastic modification in type of work, etc." Efkamp contends the cut in his hourly wages[1] constituted a substantial change in his contract of hire.

■ We have several times construed the phrase "good cause attributable to the employer." *See, e.g., Gatewood v. Iowa Iron & Metal Co.*, 251 Iowa 639, 645, 102

N.W.2d 146, 150 (1960) (good cause for voluntarily terminating employment must involve some fault of employer); *Raffety v. Iowa Employment Security Commission*, 247 Iowa 896, 899–900, 76 N.W.2d 787, 789 (1956) ("[W]here factors or circumstances directly connected with employment result in illness or disease to an employee and make it impossible for him to continue therein because of serious danger to his health, termination of employment for this reason must correctly be said to be involuntary and for 'good cause attributable to the employer,' even though the employer be free from all negligence or wrong doing in connection therewith."); *Moulton v. Iowa Employment Security Commission*, 239 Iowa 1161, 1171, 34 N.W.2d 211, 216 (1948) (good cause for voluntarily quitting must be connected with employment, if quit is for personal reasons it is voluntary, disqualifying worker from benefits); *see generally* Johnson & McSweeney, *Unemployment Compensation in Iowa: A Primer For Practitioners*, 32 Drake L.Rev. 575, 672–73 (1983).

Although not controlling of the question, we have twice considered collective bargaining agreements in determining whether a voluntary quit is with good cause attributable to the employer. *See Maschino v. George A. Hormel & Co.*, 372 N.W.2d 256, 260 (Iowa 1985) (upon plant closing employees who exercised collective bargaining agreement options to transfer to other plants on trial basis and then returned to former plant where they were laid off were not disqualified from receiving benefits); *Walles v. Iowa Employment Security Commission*, 219 N.W.2d 539, 542–43 (Iowa 1974) (where union would not permit claimant to work because he failed to pay union dues, union's actions could not be attributed to employer because it did not require employees to join union and did not employ only union members; claimant therefore disqualified from receiving benefits).

---

1. Efkamp also contends a change in his job description and working conditions contributed to his decision to quit. The hearing officer however found the quit resulted only from the cut in wages. We are bound by this finding.

Efkamp cites cases from other jurisdictions which have stated that a claimant's eligibility for benefits should be controlled by the "factual matrix at the time of separation" and not by the collective bargaining agreement. *Warner Co. v. Unemployment Compensation Board of Review*, 396 Pa. 545, 551, 153 A.2d 906, 909 (1959); *see also Lehigh County Community College v. Unemployment Compensation Board of Review*, 81 Pa.Commw. 348, 352, 473 A.2d 727, 729 (1984); *United States Steel Corp. v. Unemployment Compensation Board of Review*, 52 Pa.Commw. 631, 637, 417 A.2d 266, 269 (1980). Efkamp argues that we should apply this principle to the facts here and hold that the collective bargaining agreement should not be given effect. He thinks it is "the statute and regulations which control" and not the labor agreement.

With two exceptions the foreign cases upon which Efkamp relies bear little resemblance to his own. In *Johns-Manville Products Corp. v. Board of Review*, 122 N.J.Super. 366, 300 A.2d 572 (1973) a laid-off claimant was, in accordance with a collective bargaining agreement, offered a less-skilled job which paid $1.00 less per hour. That claimant opted to accept the layoff. He was awarded benefits. *Id.* at 370, 300 A.2d at 575. The Arkansas appeals court reached a similar conclusion on somewhat different facts in *Reynolds Metal Co. v. Couch*, 12 Ark.App. 267, 648 S.W.2d 497 (1983).

Efkamp thinks there is particular reason to apply the principle in the *Johns-Manville* and *Reynolds* cases because of Iowa Code section 96.15(1) which provides:

Any agreement by an individual to waive, release, or commute the individual's rights to benefits or any other rights under this chapter shall be void.

We however think this statute was not intended to address the fact situation here. Interpreting a similar statute the Alabama court held:

[A] claimant is not disqualified for benefits where ... unemployment is not voluntary and self-imposed but is a result of a collective bargain which operates as a waiver of, and excludes him from benefits to which he is otherwise entitled. *Department of Industrial Relations v. Alabama By-Products, Inc.*, 374 So.2d 344, 346 (Ala.Civ.App.1979).

Other foreign cases support the view taken by the agency and the trial court. *See Fegely v. Unemployment Compensation Board of Review*, 192 Pa.Super. 141, 143–46, 159 A.2d 574, 575–76 (1960) (laid-off employee earning $2.39 per hour refused a transfer under a bargaining agreement to position paying $1.89 per hour denied benefits); *Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review*, 178 Pa.Super. 348, 353, 115 A.2d 791, 794 (1955) (bricklayer earning $2.07 per hour refused job in another department at $1.63 in accordance with a collective bargaining agreement denied benefits).

▪ At the heart of Efkamp's argument is his position that the collective bargaining agreement should play no part in his claim and that his entitlement to benefits is controlled only by statute. There is some slight validity to this position, but only enough to make it misleading. In most respects a collective bargaining agreement cannot supplant a statutory scheme for unemployment compensation. *See Roberts v. Chain Belt Co.*, 2 Wis.2d 399, 402, 86 N.W.2d 406, 408 (1957) (collective bargaining agreement which accorded worker the option of being laid off rather than accepting a wage reduction not binding on agency which denied benefits). It does not however follow that collective bargaining agreements are irrelevant to the question of whether a worker could reasonably refuse to work for a reduced wage. On that question we note and approve the following:

[S]ince the majority of the employees in an appropriate collective bargaining unit by selecting a union to represent them, make that union the exclusive bargaining agent for all of the employees in the union ... the rights of the individual worker to deal with his employer is surrendered to the bargaining agent....

76 Am.Jur.2d *Unemployment Compensation* § 65 (1975).

We conclude that the hearing officer properly denied benefits to Efkamp.

AFFIRMED.