**Gene R. OLSON, Appellee,**

v.

**EMPLOYMENT APPEAL BOARD and Montgomery Ward & Company, Appellants.**

**No. 89–1382.**

Court of Appeals of Iowa.

June 26, 1990.

William C. Whitten, Knoxville, for appellant Employment Appeal Bd.

Michael W. Liebbe, Davenport, for appellee Montgomery Ward.

Janelle Swanberg, and James T. Carlin, Student Intern, HELP Legal Assistance, Davenport, for appellee Gene Olson.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

Petitioner Gene R. Olson began his employment with Montgomery Ward in 1964. Throughout most of his employment he held the position of display and advertising manager. In June 1986, petitioner's hours were reduced to thirty per week. In July of 1986, he was told the hours for the display position would probably be reduced to twenty per week. He was offered a forty-hour-a-week position as the maintenance lead person. Petitioner accepted the maintenance position.

In April 1987, petitioner was informed he would have to face a forty to fifty percent pay cut in his maintenance position or accept a position as a receiving and shipping specialist clerk. Petitioner accepted this latter position, which entailed a reduction in salary of approximately $1,300.

Petitioner held the job of a receiving and shipping specialist until November 9, 1987. On that date, petitioner quit his job. He contended he had received inadequate training and support to perform the job.

Petitioner filed a claim for unemployment compensation. An initial decision by a Job Service representative granted him benefits. Montgomery Ward appealed. Following a hearing, a hearing officer reversed the earlier decision. The hearing officer found petitioner had worked almost seven months at the new position and had accepted the change in his contract of hire. The hearing officer determined petitioner's working conditions were not sufficiently intolerable or detrimental so as to make his voluntary quit attributable to the employer. The Employment Appeal Board affirmed the decision of the hearing officer.

Petitioner filed a petition for judicial review. The district court reversed the decision of the Board. The court found petitioner quit due to the reduction of his hours in 1986 and the later reduction in pay. The court found petitioner took the position in the shipping department for a trial period and concluded he never accepted the change in his contract of hire.

The Board and Montgomery Ward now appeal. They claim petitioner accepted the change in his contract of hire because he performed services in the shipping department for almost seven months before he

quit. We agree and reverse the decision of the district court.

I. *Scope of Review.* In this judicial review of an administrative action, we are limited by Iowa Code section 17A.19(8). Our review is not de novo, but at law. *Roberts v. Iowa Dept. of Job Service,* 356 N.W.2d 218, 221 (Iowa 1984). We are bound by the agency's finding of facts if supported by substantial evidence. *Id.* We are required to review the record as a whole to determine whether there is sufficient evidence to support the decision of the agency. *Higgins v. Iowa Dept. of Job Service,* 350 N.W.2d 187, 190 (Iowa 1984). Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Roberts,* 356 N.W.2d at 221.

II. *Good Cause.* An individual shall be disqualified for unemployment benefits if he or she left his or her work voluntarily without good cause attributable to his or her employer. Iowa Code § 96.5(1) (1989). An employee leaving his or her employment may quit with "cause attributable to his or her employer," if the employer makes a substantial change in the terms or conditions of the contract of hire. *Wiese v. Iowa Dept. of Job Service,* 389 N.W.2d 676, 679 (Iowa 1986); 345 Iowa Adm.Code 4.26(1). Generally, a substantial reduction in hours or pay will give an employee good cause for quitting. *Dehmel v. Employment Appeal Board,* 433 N.W.2d 700, 703 (Iowa 1988); 345 Iowa Adm.Code 4.26(1). An employer has the burden of proving an employee quit without good cause attributable to the employer. *Taylor v. Iowa Dept. of Job Service,* 362 N.W.2d 534, 541 (Iowa 1985).

III. *"Trial Basis" Analysis.* The record in this case reveals that in June and July 1986, and again in April 1987, petitioner's job duties were drastically changed and he was subjected to a reduction in hours and remuneration. Had he quit and sought unemployment benefits, he undoubtedly would have received them. Petitioner, however, chose to continue in his employment with Montgomery Ward. The last changes in his contract of hire (a transfer to the shipping and receiving department and a reduction in salary) occurred April 15, 1987. Nearly seven months later on November 9, 1987, petitioner quit his job. Petitioner contends an employee confronted with a substantial change in his or her contract of hire should be allowed a trial period of a reasonable length of time in which he or she may continue the employment under the changed conditions. If during the trial period the employee finds the job unsuitable or unacceptable, the employee is not considered to have accepted the changes in the contract of hire and may quit and receive unemployment benefits. Petitioner contends a trial period of seven months is not unreasonable in his case in light of his age, loyalty, and long employment history with Montgomery Ward. Petitioner claims he should not be penalized for attempting to master the changed work conditions rather than quitting immediately.

While petitioner's case is sympathetic and his arguments reasonable, we must conclude no statutory or case law basis exists for recognizing the "trial basis" analysis he has advanced. In *Taylor v. Iowa Dept. of Job Service,* 362 N.W.2d 534, 538 (Iowa 1985), our supreme court specifically declined to carve out a "trial basis" exception from the unemployment compensation scheme. In *Taylor,* an asbestos worker who was drawing unemployment benefits for approximately four months, chose to take a job as a jackhammer operator. Taylor terminated his employment after seven days and claimed, as a matter of public policy, that unemployment benefits should not be denied to one who is previously collecting benefits but assumes new employment on a trial basis and later quits because he or she finds the work unsuitable. *Id.* at 537–38. The supreme court held no statutory authority existed for awarding benefits to one who accepted work on a trial basis and subsequently quit, and it concluded creation of such an exception should be left to the legislature. *Id.* at 538.

We similarly conclude the creation of a "trial basis" exception in the case of an

employee facing a substantial change in his or her contract of hire is best left to the legislative process. The policy considerations of creating such an exception are numerous. Adoption of such an exception may encourage continued employment, but it may be difficult to ascertain how long a trial basis each employee should have. An employee faced with only a reduction in hours or pay can know immediately what effect such changes will have on him or her. However, an employee, such as petitioner, who faces a change in the type of employment in which he or she is engaged, may need a period of time to ascertain how suitable the employment is and whether the change(s) in the contract of hire should be accepted. We decline to recognize a "trial basis" exception in this case.[1]

The district court and petitioner's reliance on *Maschino v. Geo. A. Hormel & Co.*, 372 N.W.2d 256 (Iowa 1985), is misplaced. *Maschino* involved the right of employees under their collective bargaining agreement to transfer to other plants on a trial basis. *Id.* at 259–60. It was an option in the collective bargaining agreement which allowed employees to transfer on a trial basis and still retain their right to later seek unemployment benefits. *Id.* at 260. The terms of collective bargaining agreements will in some cases affect an employee's receipt of unemployment compensation. *See generally Efkamp v. Iowa Dept. of Job Service*, 383 N.W.2d 566, 569–70 (Iowa 1986) (benefits denied); *Maschino*, 372 N.W.2d at 260 (benefits granted). No collective bargaining agreement exists in this case to affect petitioner's employment or his right to seek unemployment benefits. *Maschino* has no application in this matter.

The agency in this case found petitioner had accepted the change in his contract of hire and could not point to the remote modification in his contract to justify an award of unemployment benefits. Substantial evidence supports this finding.

Petitioner was confronted in April 1987 with the changes in his employment, and he continued to work until November 1987.

His conduct indicates he accepted the changes in his contract of hire, and he cannot now be heard to have quit because of changes implemented by his employer seven months before he quit.

The trial court erred when it held as a matter of law that petitioner had not accepted the changes in his contract of hire. The trial court concluded, "There is simply not any evidence in the record to show that there was an acceptance of the new contract, . . . ." As noted earlier, petitioner's conduct in working under the changed contract for nearly seven months is evidence of his acceptance of the contract. We are bound by the agency's findings of fact if they are supported by substantial evidence. *Savage v. Iowa Dept. of Job Service*, 361 N.W.2d 329, 330 (Iowa App.1984). Substantial evidence supports the agency's conclusion that petitioner quit because of dissatisfaction with his working conditions. Such dissatisfaction does not constitute "good cause" attributable to an employer. 345 Iowa Adm.Code 4.25(21). Substantial evidence also supports the agency's conclusion that petitioner did not leave his employment due to intolerable or detrimental working conditions. 345 Iowa Adm.Code 4.26(4). Petitioner was correctly denied benefits by the agency. The decision of the district court is reversed.

REVERSED.

---

1. Even if this court were inclined to recognize a "trial basis" exception as advocated by petitioner, it is unlikely a seven-month employment period could be considered a trial period.